**PREFERRED ACCIDENT INS. CO. OF NEW YORK v. ONALI et al.**

No. 12054.

Circuit Court of Appeals, Eighth Circuit.

Feb. 5, 1942.

OTIS, District Judge, dissenting in part.

———◆———

Ernest E. Watson, of Minneapolis, Minn., for appellant.

E. L. Rosenbloom, of Minneapolis, Minn., for appellee Jeremiah Onali.

Before STONE and JOHNSEN, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

One of the questions presented is whether a clause in a policy of automobile indemnity insurance excluding from coverage injuries to "any relative" of the assured, excludes from coverage an injury to a sister-in-law.

The Preferred Accident Insurance Company of New York, appellant here, issued to Jerry Onali on May 1, 1937, a policy of automobile indemnity insurance. By one of the provisions of that policy any obligation of the assured on account of the injury or death of "any relative" was excluded from coverage. The insurance provided in the policy ended May 1, 1938. A renewal certificate, not in the record, extended the insurance to May 1, 1939. A second renewal certificate, issued May 1, 1939, which included a provision presently to be noted, extended the insurance to

May 1, 1940. On August 27, 1939, Onali's automobile, when he was driving it, was involved in a collision in which Onali's sister-in-law (sister of his wife), Hilma Sarvie, who was a guest in his automobile, was injured. Thereafter Hilma Sarvie and her husband, Harold J. Sarvie, sued Onali on account of the injuries to Mrs. Sarvie. Subsequent to the filing of that suit, the present proceeding was instituted by the insurance company asking a declaratory judgment that the company is not liable, for that, so the company alleged in the complaint, injury to a sister-in-law, is not covered by the policy. A sister-in-law, such was plaintiff's theory, is a "relative." Defendants (appellees here) prevailed. The decree appealed from included a reformation of the policy and a judgment that the policy as reformed covered an injury to Mrs. Sarvie.

The second renewal certificate contained the following language: " * * * during the term of this renewal the automobile, as defined in the policy, * * * the limit of the company's liability for each such automobile and the premium therefor shall be as follows, and not as shown in the policy * * *. The insurance afforded is with respect to the following coverages. The limit of the company's liability against each such coverage shall be as stated herein subject to all of the terms of the standard form of Motor Vehicle Liability-Policy *as now issued* by this company. [Emphasis ours]. * * * Coverage A—Bodily Injury Liability. $10,000 each person * * *."

The Motor Vehicle Liability Policy "as now issued" by the company, i.e., as issued on May 1, 1939 (it was the form of policy which had been issued since July 1, 1937) contained an exclusion clause different in a single respect from that in the policy issued to Onali on May 1, 1937. The new clause excluded coverage "for * * * bodily injury to or death of an insured or to any of the following relatives of any person insured hereunder: husband or wife; child or children; father or mother; brother or sister, or father-in-law or mother-in-law." As we have seen, the original policy excluded coverage on account of the injury or death "of any relative of an assured."

The parties are agreed that on this appeal we are empowered to review the evidence and make such order or decree as the court of first instance ought to have

made. In determining what that order or decree should be the chief problem presented is one of construction. What was the meaning of the contract in force between the company and assured on the date Mrs. Sarvie was injured? What exclusion clause was embodied in that contract? Was it the old clause excluding injury to "any relative" of an assured or the new clause excluding only injuries to husband, wife, child, father, mother, brother, sister, father-in-law and mother-in-law?

█ 1. A possible and reasonable interpretation to be placed on the contract as evidenced by the renewal certificate of May 1, 1939, is that it embodied the second of the two exclusion clauses set out. The renewal certificate expressly provides that: "The limit of the company's liability against each such coverage shall be as stated herein [the limit for liability for bodily injury is fixed in the renewal certificate at $10,000 for each person] subject to all the terms of the standard form of Motor Vehicle Liability Policy as now issued by this company." In other words, the limit is not $10,000 absolutely and for injuries to *any* person. That maximum possible liability is "subject to all the terms of the standard form of Motor Vehicle Liability Policy as now issued by the company." One of the terms of that policy is that injuries, not to "any relative," but to certain enumerated blood and marriage connections, not including a sister-in-law, are excluded. That term of the policy has a direct bearing on whether the company is or is not liable and, hence, on the limit of its liability. It was subject to that term (because subject "to all the terms" of the new form of policy relevant to liability) that the limit of liability for bodily injury to any person was fixed at $10,000. Since the renewal certificate adopted the new exclusion provision, which is more favorable to the assured than the old, the contract should be construed as not excluding an injury to a sister-in-law.

Not only is the interpretation we have suggested a possible and reasonable interpretation of the contract evidenced by the renewal certificate in the particular here discussed, it appears also to be the only conceivable interpretation. When it is said that "The limit of the company's liability shall be as stated [in the renewal certificate] subject to all the terms of the standard form of Motor Vehicle Liability

Policy as now issued by this company" certainly it is meant that the limit of the company's liability should be subject to *some* terms of that policy. Since there are no terms of the policy which affect the maximum liability except those terms which affect what can be recovered within the maximum and whether there is any liability, the reference either is to those terms (including the exclusion clauses) or it is meaningless. Moreover, since a comparison of the two policies, the original policy and the policy "now issued" referred to in the renewal certificate, discloses as the only difference the one changed exclusion clause, the only purpose served by the words "as now issued" in the language—"subject to all the terms of the standard form of Motor Vehicle Liability Policy as now issued by this company", was to incorporate in the contract the new exclusion clause.

■■ 2. Even if the renewal certificate did not put in force the new exclusion clause and if the original exclusion clause only is to be construed, still it must be said that a reasonable and possible interpretation of the word "relative" as used in that exclusion clause is that it does not include a sister-in-law. A relative is "A person connected with another by blood or affinity; strictly, one allied by blood; * * *." Webster's New International Dictionary, 2d Ed., Unabridged. The word "Relative," it is said in Corpus Juris (53 C.J. 1187), is "A very indefinite word, which has often perplexed courts. * * * Its common use is to express some sort of kindred either by blood or affinity, although properly by blood; * * * In view of the decisions, it would seem the word has not technically so extensive a meaning as that given * * *. In their narrower and restricted technical sense the words [relative and relation] are used as referring only to those who are connected by ties of consanguinity or blood, or to those who are akin by blood; * * *. In contracts, statutes and wills these words have uniformly been held to include only relations by blood and not connections by marriage; * * * but in some cases * * * the terms have been held to include * * * even connections by affinity * * *." Scores of cases from many jurisdictions are cited for the rule stated, including, however, none from Minnesota. We have found no Minnesota case construing the word and none has been cited.

■ We have here then a word which even in common usage means, when the word is used exactly, "one allied by blood," and which, when used in a technical sense, has a similarly restricted meaning. As used in this policy, prepared by the company, a policy filled with legal and technical terms, it should be construed in that sense which is most favorable to the assured. Whether the strict common-usage meaning or the technical meaning is adopted, a sister-in-law is not a "relative." Such was the view also of the learned trial judge.

■ 3. The trial judge believed that, in any event, the contract should be reformed to embody the new exclusion clause inserted by the company after July 1, 1937, in contracts of the class the assured was entitled to have and that an injury to a sister-in-law was not excluded from coverage in the contract as reformed. His opinion is in the record. His reasoning is convincing. Two of the judges of this court concur in that reasoning and believe that the contract should be reformed.

■ 4. A contention made by appellant which must be noticed is that the assured breached one of the conditions of the policy and that, therefore, by the terms of the policy, the company is relieved of all liability. This contention is bottomed on the policy provision that the agreement to pay under the policy is subject to the exclusion clauses in the policy and on one of the exclusion clauses which relieves the company of any obligation "for any liability assumed by the insured under any oral or written contract or agreement." The contention is that the assured did assume liability when he agreed with a hospital which treated Mrs. Sarvie to be responsible for her medical, surgical and hospital bills. We think there is no merit in the contention that by agreeing to be responsible for the medical, surgical and hospital bills of a sister-in-law, greatly injured, the assured assumed any "liability."

### Result

In the view of the writer (Judge STONE and Judge JOHNSEN think otherwise—they think the judgment below should be affirmed) the cause should be remanded for the entry in the court below of a decree as follows: 1. An injury to Hilma Sarvie is not included within the exclusion provision of the policy sold by

Preferred Accident Insurance Company to Jerry Onali May 1, 1937, and it is not included within the exclusion provision of that policy as renewed May 1, 1939. That policy, as issued and as renewed, covered the injury received by Hilma Sarvie on August 27, 1939, when she was a guest in Onali's automobile. The Preferred Accident Insurance Company is obliged to defend the action instituted on account of such injury to Hilma Sarvie by Hilma Sarvie and her husband, Harold J. Sarvie, against Jerry Onali, and to indemnify Jerry Onali on account of any damages recovered in that action. 2. Jerry Onali has committed no act nor has he been guilty of any conduct depriving him of his rights under the policy referred to in paragraph 1 of this decree. 3. Costs are assessed against the Preferred Accident Insurance Company.

STONE, Circuit Judge.

I concur in the reasoning and conclusions stated by Judge OTIS in the main opinion, except that I think the judgment should be affirmed because I think there is sufficient evidence to support the reformation of the policy. The evidence in this case is quite unusual in that it can, as I see it, support each of three grounds for decision which are, in a sense, conflicting. The first is that the word "relative", as used in the exclusion provision of the policy issued in 1937 ("Part III (5)"), does not include relatives by marriage. The second is that, in the Renewal Certificate of 1939, the exclusion clause in the later policy form is incorporated by express reference. The third is that the evidence will support the reformation to conform to the intention of the parties—the evidence I have in mind is that showing the situation as to the two forms of policies and that showing the relation and course of dealing between the insured and Underwood, the agent of the plaintiff. Since each of the above grounds leads to the same ultimate result—liability of the appellant—I am not worried by seeming or real inconsistencies.

While I agree with Judge OTIS that, if the decision *must* rest entirely upon either the first or the second above grounds, the judgment should follow the form suggested in his opinion, yet (thinking that the evidence will also support reformation) I prefer to base my determination upon each of the above three

grounds and to have the order be one of affirmance.

JOHNSEN, Circuit Judge (concurring specially).

I would affirm the judgment of the trial court on the grounds (1) that the recitation in the renewal certificate, that coverage should be "subject to all of the terms of the standard form of Motor Vehicle Liability Policy as now issued by the Company", gave the assured the right to claim the benefit here of the new exclusion clause adopted by the company, as a matter of contract modification or substitution by assent; and (2) that the provision in the policy, that the assured should not voluntarily make any payment, assume any obligation or incur any expense other than for immediate surgical and medical relief, *"except at his own cost"* (italics added), impliedly gave him the right to agree to pay the hospital and medical bills of his sister-in-law, in order to obtain the necessary care for her, if his acts in this regard were not done under circumstances which would in other respects breach his obligation under the general cooperation clause of the policy. There is here no charge of collusion or of other bad faith or of an intention directly to admit liability; nor are other competent, prejudicing circumstances shown. In this situation, and in view of the implication which must be held to inhere in the language "except at his own cost", the humanitarian act of the assured in providing proper medical and hospital care for his injured guest, without regard to the question of his legal responsibility for the accident, cannot alone be allowed to void his contract of insurance.

While there probably was no real necessity for technical reformation of the policy, since the assured's assent to the change in the exclusion clause doubtless constituted an automatic modification and simply left the substituted provision a matter of reference to the new policy form, yet there could hardly be any harm to the company in having the changed clause specifically written into the original policy by a decree of formal reformation. An ordinary policy holder would certainly feel more secure with such a decree than in having to rely upon some separated form, as a matter of legal reference. In any event, there certainly could be no

prejudice to the company from the decree of reformation, under the situation in this case, and it is therefore unnecessary to waste any time upon such a complaint here.

I think the judgment should be affirmed upon the grounds which I have indicated.